UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| WELLINGTON W., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of Social Security, <br><br> Defendant. | Civ. No. 22-05042 (KM) <br><br> **OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

Plaintiff Wellington W. brings this action to review a final decision of the Commissioner of Social Security ("Commissioner") denying his claims for Title II Disability Insurance Benefits ("DIB"). He argues that the ALJ's determination that he is not disabled as defined by Title II of the Social Security Act was not supported by substantial evidence. For the reasons stated below, the Commissioner's decision is **AFFIRMED**.

**I.   BACKGROUND**[1]

Wellington W. applied for DIB pursuant to Sections 216(i) and 223(d) of the Social Security Act ("SSA") on February 19, 2014. (R. 173-74.) He claimed a closed period of disability from February 5, 2014 to October 7, 2019, based on the following physical impairments: 1) enlarged heart, 2) high blood pressure, 3) high cholesterol, and 4) diabetes. (R. 192.) Later, he also alleged chronic migraine headaches and disorders of the back. (R. 211, 214.) His application

---

[1] Citations to the record are abbreviated as follows:

"DE" = docket entry

"R. _" = Administrative Record (DE 3)

"Pl. Br." = Wellington W.'s moving brief (DE 6)

"Def. Br." = SSA Commissioner's opposition brief (DE 8)

"Reply" = Wellington W.'s reply brief (DE 9)

was denied initially and upon reconsideration. (R. 85, 94.) On December 15, 2016, he had a hearing before an Administrative Law Judge ("ALJ") to review his application de novo. (R. 42, 118.) ALJ Sharon Allard heard testimony from the plaintiff, who was represented by counsel, and from a vocational expert ("VE"). On February 24, 2017, ALJ Allard issued a decision finding that Wellington W. has the residual functional capacity to perform medium work, noting that the claimant can understand and execute simple tasks but will be "off task 5 percent of the workday due to the combination of his impairments." (R. 14.) ALJ Allard ultimately concluded that through the date last insured, Wellington W. was capable of performing past relevant work, as well as other jobs existing in the national economy, directing a finding that the claimant was not under a disability as defined in the Social Security Act between the alleged onset date and the date last insured. (R. 17.) The Appeals Council denied Plaintiff's request for review on June 1, 2018, rendering the ALJ's decision a final decision of the Commissioner. (R. 1.) Wellington W. then filed a complaint in this Court seeking judicial review of the Commissioner's decision.

On March 19, 2020, in a decision by Magistrate Judge Jacob P. Hart, this Court remanded Wellington W.'s case to the Commissioner for further proceedings so that the ALJ could further evaluate the migraines reported by Wellington W. Specifically, Judge Hart instructed the ALJ to "obtain oral or written testimony from a neurologist or other expert in migraine headaches who has reviewed all of the evidence and has opined as to how debilitating Wellington W.'s headaches were likely to have been during the relevant period." (R. 639-51.) The ALJ held a supplemental hearing on October 1, 2020, during which she heard testimony from the plaintiff, who was represented by new counsel, as well as a neurology expert and a VE. (R. 559-97.) On May 5, 2021, ALJ Allard again issued an unfavorable decision denying Wellington W.'s benefits, making the same RFC and disability determinations as she did in her first decision. (R. 539.) The Appeals Council denied Plaintiff's request for review on June 21, 2022, rendering the ALJ's second decision a final decision of the Commissioner. (R. 531-55.) This appeal followed.

## II. DECISION FOR REVIEW

### A. The Five-Step Process and this Court's Standard of Review

To qualify for Title II DIB benefits, a claimant must meet the insured status requirements of 42 U.S.C. § 423. To qualify, a claimant must show that she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted (or can be expected to last) for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(c), 1382(a).

Under the authority of the SSA, the Social Security Administration (the "Administration") has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. This Court's review necessarily incorporates a determination of whether the ALJ properly followed the five-step process, which is prescribed by regulation. The steps may be briefly summarized as follows:

> **Step 1:** Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 CFR §§ 404.1520(b), 416.920(b). If not, move to step two.
>
> **Step 2:** Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, move to step three.
>
> **Step 3:** Determine whether the severe impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 CFR Pt. 404, Subpt. P, App. 1, Pt. A. If so, the claimant is automatically eligible to receive disability benefits (and the analysis ends); if not, move to step four. *Id.* §§ 404.1520(d), 416.920(d).
>
> **RFC and Step 4:** Determine the claimant's "residual functional capacity" ("RFC"), meaning "the most [the claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). *Caraballo v. Comm'r of Soc. Sec.*, 2015 WL 457301, at *1 (D.N.J. Feb. 3, 2015).

3

Decide whether, based on his RFC, the claimant can return to her prior occupation. 20 C.F.R. § 1520(a) (4)(iv); *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). If not, move to step five.

**Step 5:** At this point, the burden shifts to the Administration to demonstrate that the claimant, considering his age, education, work experience, and RFC, is capable of performing jobs that exist in significant numbers in the national economy. 20 CFR §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91–92 (3d Cir. 2007). If so, benefits will be denied; if not, they will be awarded.

On appeal, the Court conducts a plenary review of the legal issues. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). Factual findings are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* When substantial evidence exists to support the ALJ's factual findings, this Court must abide by the ALJ's determinations. *See id.* (citing 42 U.S.C. § 405(g)).

This Court may, under 42 U.S.C. § 405(g), affirm, modify, or reverse the Commissioner's decision, or it may remand the matter to the Commissioner for a rehearing. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984); *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 865–66 (3d Cir. 2007). Outright reversal with an award of benefits is appropriate only when a fully developed administrative record contains substantial evidence that the claimant is disabled and entitled to benefits. *Podedworny,* 745 F.2d at 221–222; *Morales v. Apfel,* 225 F.3d 310, 320 (3d Cir. 2000).

4

Remand is proper if the record is incomplete, or if there is a lack of substantial evidence to support a definitive finding on one or more steps of the five-step inquiry. *See Podedworny*, 745 F.2d at 221–22. Remand is also proper if the ALJ's decision lacks adequate reasoning or support for its conclusions, or if it contains illogical or contradictory findings. *See Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119–20 (3d Cir. 2000); *Leech v. Barnhart*, 111 F. App'x 652, 658 (3d Cir. 2004) ("We will not accept the ALJ's conclusion that Leech was not disabled during the relevant period, where his decision contains significant contradictions and is therefore unreliable."). It is also proper to remand where the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted).

**B. The ALJ's Decision**

ALJ Allard undertook the necessary step-by-step inquiry.

### Step 1

The ALJ concluded Wellington W. had not engaged in substantial gainful activity during the period from February 5, 2014, the alleged onset date, through March 31, 2017, his date last insured. (R. 543.)

### Step 2

The ALJ found that through the date last insured, Wellington W. had the following severe impairments: essential hypertension, migraines, affective disorder, degenerative disc disease, and type 2 diabetes mellitus. (R. 544 (citing 20 CFR 404.1520(c)).) Given Wellington W.'s body mass index, the ALJ also considered the potential impact of obesity in causing or contributing to co-existing impairments, but found no evidence to suggest that obesity caused more than minimal limitation in the claimant's ability to perform basic work activities. (R. 544.)

### Step 3

With respect to the impairments found to be severe, the ALJ determined that Wellington W. did not have an impairment or combination of impairments

5

that met or medically equaled the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 544.) In particular, the ALJ's discussion of the evidence focused on Listings 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root)[2], 1.16 (lumbar spinal stenosis

---

[2]   **1.15 *Disorders of the skeletal spine resulting in compromise of a nerve root(s)***, documented by A, B, C, and D: (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

> **A.** Neuro-anatomic (radicular) distribution of one or more of the following symptoms consistent with compromise of the affected nerve root(s):
>
>> 1. Pain; or
>> 2. Paresthesia; or
>> 3. Muscle fatigue.
>
> **AND**
>
> **B.** Radicular distribution of neurological signs present during physical examination or on a diagnostic test and evidenced by 1, 2, and either 3 or 4:
>
>> 1. Muscle weakness; and
>> 2. Sign(s) of nerve root irritation, tension, or compression, consistent with compromise of the affected nerve root (see 1.00F2)
>> 3. Sensory changes evidenced by:
>>> a.  Decreased sensation; or
>>> b.  Sensory nerve deficit (abnormal sensory nerve latency) on electrodiagnostic testing; or
>> 4. Decreased deep tendon reflexes.
>
> **AND**
>
> **C.** Findings on imaging consistent with compromise of a nerve root(s) in the cervical or lumbosacral spine.
>
> **AND**
>
> D. Impairment-related physical limitation of musculoskeletal functioning that has lasted, or is expected to last, for a continuous period of at least 12 months, and medical documentation of at least one of the following:
>
>> 1. A documented medical need for a walker, bilateral canes, or bilateral crutches or a wheeled and seated mobility device involving the use of both hands; or
>>
>> 2. An inability to use one upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements, and a documented medical need for a one-handed, hand-held assistive device that requires the use of the other upper extremity or a wheeled and seated mobility device involving the use of one hand; or

resulting in compromise of the cauda equine)[3], 9.00 (endocrine disorders)[4],

---

        3. An inability to use both upper extremities to the extent that neither can be used to independently initiate, sustain, and complete work-related activities involving fine and gross movements.

[3]     ***1.16 Lumbar spinal stenosis resulting in compromise of the cauda equina***, documented by A, B, C, and D:

    **A.** Symptom(s) of neurological compromise manifested as:

        1. Nonradicular distribution of pain in one or both lower extremities; or
        2. Nonradicular distribution of sensory loss in one or both lower extremities; or
        3. Neurogenic claudication.

**AND**

**B.** Nonradicular neurological signs present during physical examination or on a diagnostic test and evidenced by 1 and either 2 or 3:

        1. Muscle weakness.
        2. Sensory changes evidenced by:
            a. Decreased sensation; or
            b. Sensory nerve deficit (abnormal sensory nerve latency) on electrodiagnostic testing; or
            c. Areflexia, trophic ulceration, or bladder or bowel incontinence.
        3. Decreased deep tendon reflexes in one or both lower extremities.

**AND**

**C.** Findings on imaging or in an operative report consistent with compromise of the cauda equina with lumbar spinal stenosis.

**AND**

**D.** Impairment-related physical limitation of musculoskeletal functioning that has lasted, or is expected to last, for a continuous period of at least 12 months, and medical documentation of at least one of the following:

    1. A documented medical need for a walker, bilateral canes, or bilateral crutches or a wheeled and seated mobility device involving the use of both hands; or

    2. An inability to use one upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements, and a documented medical need for a one-handed, hand-held assistive device that requires the use of the other upper extremity or a wheeled and seated mobility device involving the use of one hand.

[4]     Regarding Wellington W.'s diabetes, the Administration "evaluate[s] impairments that result from endocrine disorders under the listings for other body

11.02 (epilepsy)[5], and 12.04 (depressive, bipolar and related disorders)[6].

---

systems. . . [i]f [an] impairment(s) does not meet or medically equal a listing in another body system, [the claimant] may or may not have the residual functional capacity to engage in substantial gainful activity. In this situation, [the Administration will] proceed to the fourth and, if necessary, the fifth steps of the sequential evaluation process." 20 CFR 404.1520(d), 404.1525, 404.1526 (Listing 9.00).

[5]     **11.02 Epilepsy**, documented by a detailed description of a typical seizure and characterized by A, B, C, or D:

> **A.** Generalized tonic-clonic seizures, occurring at least once a month for at least 3 consecutive months despite adherence to prescribed treatment.
>
> **OR**
>
> **B.** Dyscognitive seizures, occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment.
>
> **OR**
>
> **C.** Generalized tonic-clonic seizures, occurring at least once every 2 months for at least 4 consecutive months despite adherence to prescribed treatment; and a marked limitation in one of the following:
>
>> 1. Physical functioning; or
>> 2. Understanding, remembering, or applying information; or
>> 3. Interacting with others; or
>> 4. Concentrating, persisting, or maintaining pace; or
>> 5. Adapting or managing oneself.
>
> **OR**
>
> **D.** Dyscognitive seizures (see 11.00H1b), occurring at least once every 2 weeks for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); and a marked limitation in one of the following:
>
>> 1. Physical functioning; or
>> 2. Understanding, remembering, or applying information; or
>> 3. Interacting with others; or
>> 4. Concentrating, persisting, or maintaining pace; or
>> 5. Adapting or managing oneself.

[6]     **12.04 Depressive, bipolar and related disorders**, satisfied by A and B, or A and C:

> **A.** Medical documentation of the requirements of paragraph 1 or 2:
>
>> 1. Depressive disorder, characterized by five or more of the following:
>>> a. Depressed mood;
>>> b. Diminished interest in almost all activities;
>>> c. Appetite disturbance with change in weight;

8

### RFC and Step 4

Next, ALJ Allard defined the claimant's RFC:

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform medium work as

---

> d. Sleep disturbance;
> e. Observable psychomotor agitation or retardation;
> f. Decreased energy;
> g. Feelings of guilt or worthlessness;
> h. Difficulty concentrating or thinking; or
> i. Thoughts of death or suicide.
>
> 2. Bipolar disorder, characterized by three or more of the following:
>
>> a. Pressured speech;
>> b. Flight of ideas;
>> c. Inflated self-esteem;
>> d. Decreased need for sleep;
>> e. Distractibility;
>> f. Involvement in activities that have a high probability of painful consequences that are not recognized; or
>> g. Increase in goal-directed activity or psychomotor agitation.
>
> **AND**
>
> **B.** Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:
>
>> 1. Understand, remember, or apply information.
>> 2. Interact with others.
>> 3. Concentrate, persist, or maintain pace.
>> 4. Adapt or manage oneself.
>
> **OR**
>
> **C.** Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
>
>> Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder; and
>
>> Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life.

9

>defined in 20 CFR 404.1567(c), with exceptions. The claimant can understand and execute simple tasks. Due to the impairments, the claimant would be off-task 5% of the workday.

(R. 547.) The ALJ analyzed at length the evidence supporting that RFC determination. (R. 547-59.)

Based on the RFC, the ALJ concluded at Step 4 that Wellington W. was capable of performing past relevant work as a warehouse worker and order picker. (R. 549.) As required, the ALJ considered Wellington W.'s position both as he actually performed it and as it is generally performed. Because she found Wellington W. was capable of performing past relevant work, the ALJ could have concluded her analysis at Step 4, but she afforded Wellington W.'s claims further consideration under Step 5 nonetheless.

**Step 5**

Considering Wellington W.'s age, education, work experience, and RFC, the ALJ concluded at Step 5 that in addition to past relevant work, there were other jobs that Wellington W. could have performed. (R. 550.) The ALJ noted that Wellington W.'s ability to perform the full range of medium work was impeded by additional limitations, but found, based on the testimony of the VE and the information contained in the Dictionary of Occupational Titles, that Wellington W. would have been capable of making a successful adjustment to other work that exists in significant numbers in the national economy, directing a finding that he is not disabled. (R. 550-51.)

### III. DISCUSSION

In his appeal, Wellington W. asserts that the ALJ's decision was flawed in two ways. First, he contends that the RFC assessment is not supported by substantial evidence because "the Commissioner improperly evaluated the medical evidence" and "failed to give proper credence to the complaints of [Wellington W.] concerning his hypertension, migraines, mental impairments, . . . cardiac impairments and degenerative disc disease." (Pl. Br. at 14 (citations

10

omitted).) Second, he argues that the "Commissioner erred as a matter of law in finding that Plaintiff can perform his past relevant work" because "the ALJ's RFC assessment is simply conclusory and does not contain any rationale or reference to the supporting evidence, as required by S.S.R. 96-8p." (*Id.* at 19-20.) I address each of these arguments in turn.

### A. Evaluation of the Medical Record and Plaintiff's Subjective Complaints

Wellington W. argues that ALJ Allard improperly evaluated his subjective complaints and the corresponding medical evidence regarding his 1) hypertension, 2) cardiological impairments, 3) migraines; 4) mental impairments, and 5) degenerative disc disease. (Pl. Br. at 14.) To the contrary, I find that the ALJ's evaluation of Wellington W.'s subjective complaints regarding these impairments and her evaluation of the relevant portions of the medical record are supported by substantial evidence.

As an initial matter, the Social Security Act is clear that "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability[.]" 42 U.S.C. § 423(d)(5)(A); *see also* 20 C.F.R. § 404.1529(a) (same). In evaluating a claimant's subjective complaints, the ALJ considers evidence from physicians; the claimant's daily activities; and descriptions of symptoms, medication, and other treatment. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2016 WL 1119029, at *2-4. The ALJ also considers "whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [the claimant's] statements and the rest of the evidence." 20 C.F.R. § 404.1529(c)(4). The ALJ is given great discretion in evaluating a claimant's subjective complaints, and such findings are entitled to great deference. *Zirnsak v. Colvin*, 777 F.3d 607, 612 (3d Cir. 2014). Because the thrust of Wellington W.'s contention on appeal is that the ALJ did not properly consider his complaints regarding certain impairments, my discussion here focuses primarily on the ALJ's evaluation of each of those conditions in the context of the relevant medical and other evidence.

11

*First*, Wellington W. argues that the ALJ "failed to discuss or even mention plaintiff's cardiac impairments including his cardiomegaly, daily chest pains and pressure, enlarged heart, angina pectoris, and an abnormal stress test." (Pl. Br. at 15.) However, as this Court previously held, "there is no evidence in the record that [Wellington W.'s] cardiological conditions affected his ability to perform basic work activities." (R. 646.) In arriving at this conclusion, the Court reviewed the available evidence pertaining to the claimant's cardiological impairments. The evidence included a March 2009 EKG reading that revealed a "mild" enlargement of the left ventricle, a July 2014 EKG reading that was normal in all respects, and notes from a September 2014 visit with Dr. Anjum Tamwir stating that Wellington W.'s heart was "normal to auscultation, with 'regular rate, normal heart sounds and no murmurs,' and that it was normal to palpation." (R. 647 (citations omitted).) Significantly, Wellington W.'s told Dr. Tamwir during this visit that he "experienced chest pain, but that it did not limit his activities." (R. 647 (citations omitted).) Once again, Wellington W. "has not shown that the reliability of the ALJ's decision was affected by her failure to discuss his cardiac treatment." (R. 647.)

*Second*, Wellington W. argues that the ALJ "wrongly found that plaintiff's hypertension did not cause any cardiac damage." (Pl. Br. at 15.) Wellington W. points to no evidence to support his claim that there was a causal link between his hypertension and his cardiological impairments. At any rate, however, the issue is inconsequential. The relevant inquiry is not so much the etiology of the impairments, but rather whether those impairments resulted in any functional limitation. As discussed above, "there is no evidence in the record that [Wellington W.'s] cardiological conditions affected his ability to perform basic work activities." (R. 646.)

*Third*, Wellington W. argues that the ALJ erred in her evaluation of his complaints of headaches and improperly relied on the testimony of medical expert Dr. John Sabow. (Pl. Br. at 17-20.) Reviewing the ALJ's thorough evaluation of the evidence surrounding Wellington W.'s headaches, I find that

12

neither of these statements rings true. With respect to the medical record, the ALJ reviewed treatment notes stating that upon complaints of a migraine headache, Wellington W. was given Toradol after he declined to take Tylenol as initially recommended. (R. 548.) The ALJ also discussed treatment records that revealed the claimant's headaches occurred a few times a week, but were noted to be relieved with Excedrin. (R. 548.) Significantly, the ALJ also noted medical records from December 2015 which reveal a doctor's visit during which the claimant denied experiencing any recent headaches at all. (R. 548.) Of critical importance here is that ALJ Allard complied with this Court's remand order and obtained testimony from a medical expert who, based on a review of the full medical record, was able to opine on the severity of Wellington W.'s headaches and the extent to which they resulted in any functional limitation. The ALJ appropriately relied on Dr. Sabow's testimony that Excedrin Migraine sufficed to alleviate headaches, which was not indicative of a "disabling migraine"; that the record evidence did not support the number and severity of headaches that the claimant reported in his headache journal; and that there was no evidence that warranted the need to incorporate an accommodation for headaches into the ALJ's RFC and disability determinations. (R. 549, 584-95.) The ALJ also appropriately placed significant weight on Dr. Sabow's testimony that the medical record from the relevant time period was devoid of any formal diagnosis of migraine headaches, as well as his observation that Wellington W.'s pain was likely caused by tension headaches or cervicalgia. (R. 588-89.) Given her thorough consideration of the claimant's headaches on remand with the benefit of expert medical testimony, I find that the ALJ's evaluation is supported by substantial evidence.

*Fourth*, regarding his mental impairments, Wellington W. argues that the ALJ "failed to consider the severity of plaintiff's depression due to his being fired and evicted, thoughts that he wanted to kill himself and the worsening of his depression." (Pl. Br. at 17.) But the ALJ specifically considered the medical evidence surrounding the claimant's mental impairments, starting with records of an emergency room visit during 2014 due to suicidal ideations. (R. 548.) The

13

ALJ then reviewed records from subsequent examinations and noted that the records revealed no subjective reports of depression or sleep disturbance, instead supporting a finding of normal judgment, normal behavior, and no severe anxiety. (R. 548-49.) Given the ALJ's thorough consideration of the relevant medical evidence, her evaluation of the claimant's mental impairments is supported by substantial evidence.

*Finally*, Wellington W. generally argues that the ALJ did not properly evaluate the record evidence pertaining to his degenerative disc disease. Wellington W. provides no support for this argument whatsoever; he cites no evidence that the ALJ failed to consider and identifies no functional limitation that his degenerative disc disease purportedly caused. In any event, the ALJ did, in fact, address this impairment, noting that while x-rays revealed "mild to moderate posterior narrowing of the lumbar spine," musculoskeletal examinations revealed no back pain, weakness, neck pain, stiffness, or gait changes. I therefore find that, like the ALJ's evaluation of all the other claimed impairments, her evaluation of Wellington W's degenerative disc disease is supported by substantial evidence.

### B. RFC Assessment and Performance of Past Relevant Work

Wellington W. next argues that 1) "the Commissioner erred as a matter of law in finding that the Plaintiff can perform his past relevant work," and, more broadly, 2) the ALJ's RFC determination that he can perform work at a medium exertion level is not supported by substantial evidence. (Pl. Br. 19-22.)

As a threshold matter, I decline to address Wellington W.'s specific argument that the ALJ erred in finding at Step 4 that he could perform his past relevant work as a warehouse worker and order picker. Even if that Step 4 finding were incorrect, any such error would be harmless in light of the ALJ's Step 5 analysis. The ALJ did not—as she could have—end her analysis at Step 4 based on her previous-work finding. Instead, ALJ Allard moved on to Step 5 and independently found that, based on Wellington W.'s RFC, he was capable of transitioning to other jobs available in the national economy. (R.

14

549-51.) Nevertheless, I will take up each of the claimant's three surrounding arguments pertaining to the ALJ's RFC determination and his contention that it is not supported by substantial evidence:

*First*, Wellington W. argues that the ALJ erred in finding him capable of performing work at a medium exertion level because such a finding contradicts the reviewing state agency's consultative examiner, Dr. Eyassu, "who found plaintiff's ability to lift limited." (Pl. Br. at 20.) Though the consultative examiner did find a limitation with respect to the claimant's lifting ability, Wellington W. mischaracterizes that evidence. Dr. Eyassu's opinion stated that the claimant had lower back pain that was exacerbated only when he performed heavy lifting (R. 300), which would not preclude the performance of medium work. Indeed, the reviewing state agency physicians specifically considered Dr. Eyassu's opinion and determined it was consistent with medium work. (R. 87, 90, 97, 98.) Wellington W.'s argument that the ALJ's RFC determination is inconsistent with the findings of the state agency's consultative examiner therefore fails.

*Second*, Wellington W. argues that the ALJ "failed to comply with SSR 96-8p in assessing the claimant's RFC because the ALJ's RFC assessment is simply conclusory and does not contain any rationale or reference to the supporting evidence." (Pl. Br. at 20.) This argument lacks any merit. As I discussed at length in Section III.A., *supra,* the ALJ did not merely announce her RFC determination without providing any support or explanation. She appropriately evaluated the objective medical record, considered the claimant's subjective complaints, weighed the testimony of the VE and the medical expert, and provided a clear presentation of her reasoning at every step of the analysis.

*Third*, Wellington W. attacks the VE's testimony, arguing that "[t]he vocational expert failed to support her opinion regarding an individual being 'off task' [or] the number of jobs available in the national economy." (Pl. Br. at 22.) He also contends that the VE "failed to consider the amount of days plaintiff would be unable to go to work due to his severe and frequent

headaches." (*Id.*) As the Commissioner rightly points out, however, "the vocational expert does not offer opinions or determine the number of days a claimant would miss work due to his impairments—that is an administrative finding solely within the province of the ALJ." (Opp. at 16 (citing 20 C.F.R. § 404.1527(d)(2).) Likewise, it is solely ALJ's responsibility to determine the extent to which a claimant may be off-task as a result of his impairments. 20 C.F.R. § 404.1546(c).[7] To be sure—though Wellington W. does not specifically challenge the ALJ's consideration of the VE's testimony—I find that ALJ Allard appropriately weighed the VE's testimony and considered it within the broader context of the objective medical record when she concluded that Wellington W.'s RFC of medium work was subject to the limitation that he would be off-task 5% of the day as a result of his headaches. (*See* discussion of headache evidence on remand at pp. 12–13, *supra.*)

\* \* \*

Overall, I find that ALJ Allard engaged in an extensive functional analysis in performing her RFC assessment and determining that Wellington W. could perform medium work, as defined in 20 C.F.R. 404.1567(c), subject to certain exceptions. Moreover, she appropriately weighed the testimony of the VE, as well as the medical expert this Court required her to hear on remand. While the claimant disagrees with the ALJ's assessment and cites contrary evidence, the ALJ's decision is supported by substantial evidence and therefore will be upheld.

---

[7]     Wellington W.'s suggestion that the VE failed to provide support for her testimony regarding the number of relevant jobs in the national economy is superfluous. The VE specifically referenced the Dictionary of Occupational Titles when she offered this data for the ALJ's consideration. (R. 696-98.)

16

## IV.     CONCLUSION

For the reasons set forth above, the Commissioner's decision is **AFFIRMED**. A separate order will issue.

Dated: August 29, 2023

/s/ Kevin McNulty

**Hon. Kevin McNulty**
**United States District Judge**

17